1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11   UHURU SUGAL VAUGHN,                   Case No. CV 13-7498 SVW (SS)

12                Plaintiff,        **MEMORANDUM AND ORDER:**
                                    **(1) DENYING REQUEST FOR**
13        v.                        **APPOINTMENT OF COUNSEL WITHOUT**
                                    **PREJUDICE; AND (2) DISMISSING**
14   OFFICER J. CAMACHO, et al.,    **COMPLAINT WITH LEAVE TO AMEND**

15                Defendants.

16

17                             **I.**

18                       **INTRODUCTION**

19

20        On November 27, 2013, Plaintiff, Uhuru Sugal Vaughn, a state

21   prisoner  proceeding  pro se,  filed  a  civil  action  alleging

22   violations  of  his  federal  civil  rights  pursuant  to  42  U.S.C.

23   § 1983  and  a  pendent  state  law  claim  under  the  California  Tort

24   Claims  Act,  California  Government  Code  section  810  et seq.

25   ("CTCA").   (Dkt. No. 4).   For  the  reasons  stated  below,  the

26   Complaint is dismissed with leave to amend.[1]

27   ───────────────────────
     [1] Magistrate judges may dismiss a complaint with leave to amend
28   without approval of the district judge.  See McKeever v. Block,
     932 F.2d 795, 795 (9th Cir. 1991).

1    Congress mandates that district courts initially screen
2  civil complaints filed by prisoners seeking redress from a
3  governmental entity or employee.  28 U.S.C. § 1915A(b).  This
4  Court may dismiss such a complaint, or any portions thereof,
5  before service of process if the Court concludes that the
6  complaint (1) is frivolous or malicious, (2) fails to state a
7  claim upon which relief can be granted, or (3) seeks monetary
8  relief from a defendant who is immune from such relief.  28
9  U.S.C. § 1915A(b) (1)-(2); see also Lopez v. Smith, 203 F.3d
10  1122, 1126-27 & n.7 (9th Cir. 2000) (en banc).

11

12                              **II.**

13            **ALLEGATIONS AND CLAIMS OF THE COMPLAINT**

14

15    The Complaint names as Defendants three employees of the
16  California State Prison-Los Angeles County in Lancaster,
17  California ("CSP-LAC"), where Plaintiff is currently
18  incarcerated:    (1)  Correctional  Officer  J.  Camacho,
19  (2) Correctional Officer G. Sharperson, and (3) Sergeant F.
20  Villalobos.  (Complaint at 2-3).[2]  All Defendants are sued in
21  both their individual and official capacities.  (Id.).
22  \\
23  \\
24  _____

25  [2]  The Complaint consists of two parts, each of which is
   separately paginated: a six-page Form Complaint, which consists
26  of little more than a list of Defendants, and a thirty-nine-page
   handwritten Complaint, including exhibits, which sets forth
27  Plaintiff's claims in detail.  Except where specifically noted,
   citations are to the handwritten Complaint and not the Form
28  Complaint.

1    The Complaint alleges that prison officials failed to
2  protect Plaintiff from physical harm by his cellmate. Plaintiff
3  states that on July 25, 2012, CSP-LAC was placed on lockdown
4  because authorities had discovered a "credible kite."[3]   (Id. at
5  5).   After Plaintiff was locked in, his cellmate, Acosta,
6  confided that he was concerned for his safety on the yard and was
7  intending to request placement in administrative segregation.
8  (Id.).   Later that afternoon, Acosta told Officer Camacho of his
9  safety concerns and his desire to be placed in ad-seg.   (Id.).
10 Camacho treated Acosta's safety concerns "as a joke" and loudly
11 yelled "safety concerns from who?"   (Id. at 6).   This
12 announcement effectively informed the entire cell tier that
13 Acosta was trying to move, which put Acosta "on the spot" and
14 further endangered Acosta's immediate safety.   (Id.).
15 Nonetheless, Camacho told Acosta that he would relay Acosta's
16 placement request to Sergeant Villalobos.   (Id.).

17

18    Camacho returned at 5:45 p.m. and told Acosta that
19 Villalobos said that ad-seg had no room at that moment but that
20 Acosta would be moved there in the morning.   (Id.).   Acosta
21 immediately packed up his belongings and became increasingly
22 agitated as the evening wore on.   (Id.).   Acosta tried to provoke
23 a fight with Plaintiff so that he (Acosta) would be moved
24 immediately to ad-seg.   (Id. at 6-7).   When Plaintiff resisted,
25 Acosta threatened to kill him.   (Id. at 7).   At 10:30 p.m.,

26

27 [3] "A letter [from a prisoner] smuggled past prison officials to
   another prisoner is called a 'kite.'"   United States v. Keys, 133
28 F.3d 1282, 1285 (9th Cir. 1998).

3

Officer Sharperson stopped by Plaintiff's cell during his security walk. (Id.). Plaintiff told Sharperson of his own safety concerns due to Acosta's agitation. (Id.). Sharperson stated that he would convey Plaintiff's message to Villalobos, but warned Plaintiff that if he wanted a move that night, Plaintiff and Acosta would have to "earn it," meaning that they would have to fight. (Id.).

Acosta took out four razors and continued to try to provoke Plaintiff into fighting. (Id.). Shortly after midnight, Acosta punched Plaintiff on the forehead as he was laying on his bunk. (Id.). Plaintiff began "fighting for [his] life" to keep Acosta from killing him. (Id. at 8). During the struggle, Acosta cut Plaintiff with the razors in numerous places and bit him twice. (Id.). After fifteen minutes of fighting, Plaintiff was able to pin Acosta and began yelling "man down" to summon the guards. (Id.). It took seven to ten minutes for a guard to arrive. Plaintiff and Acosta were then taken to the medical unit. (Id.).

Villalobos was present at the medical unit as well. (Id. at 8). He refused to believe that Plaintiff's injuries were caused by a razor and called Plaintiff "a fucking crybaby." (Id. at 9). However, while Plaintiff was waiting to be transported to an outside hospital to receive stitches, Villalobos returned and admitted that he was sorry for Plaintiff's injuries. (Id.). Villalobos explained that he thought Acosta was bluffing and would not harm Plaintiff because Plaintiff and Acosta had been cellmates for fifteen months without incident. (Id.).

1    Villalobos also told Plaintiff that he would not be written up
2    for the fight because he was the victim.  (Id.).

3

4        When Plaintiff returned from the hospital at 6:00 a.m. on
5    July 26, 2012, he noticed that the razors Acosta had used in the
6    attack were still on the cell floor.  (Id. at 10).  Plaintiff
7    reported the evidence, but was told that physical evidence was
8    not needed because the incident report would record the fact that
9    Acosta cut Plaintiff with razors.  (Id.).  However, the incident
10   report did not mention the use of razors.  No pictures were taken
11   of Plaintiff's injuries or of the cell following the attack.
12   (Id. at 11).  According to Plaintiff, these omissions do not
13   comply with protocol and reflect "a conspiracy from the top down
14   to conceal what really happened on the day of the incident."
15   (Id.).

16

17       The Complaint raises two primary claims.  First, Plaintiff
18   asserts a state law tort claim under the California Tort Claims
19   Act, Cal. Gov't Code §§ 810 et seq.  Plaintiff alleges that
20   Defendants negligently breached their duty to protect him from
21   physical harm.  (Complaint at 16).  According to Plaintiff,
22   Camacho exercised "reckless disregard" for Acosta's safety
23   concerns, which "created an unsafe environment" for Plaintiff.
24   (Id.).  Sharperson also showed reckless disregard for Plaintiff's
25   safety by refusing to remove Plaintiff from the "unsafe
26   environment" of his cell with Acosta and encouraging Plaintiff
27   and Acosta to fight.  (Id. at 17).  Villalobos had "direct
28   knowledge" that Plaintiff was at risk of being assaulted, but

                                  5

refused "to move Plaintiff to another cell." (Id.).   Second, Plaintiff asserts a federal civil rights claim under 42 U.S.C. § 1983.   Plaintiff states that Defendants violated his Eighth and Fourteenth Amendment rights "to be free from violence at the hands of other prisoners" for the same acts and omissions that underlie his negligence claim. (Id. at 18-20).   Plaintiff seeks $1,000,000 in compensatory damages from all Defendants collectively, $100,000 in punitive damages from each Defendant individually, and appointment of counsel.[4]   (Id. at 22).

\\

\\

\\

---

[4] To the extent that the request for appointment of counsel in the Prayer for Relief may be construed as a motion for appointment of counsel, the motion is DENIED. (Complaint at 22). Plaintiff is advised that there is no constitutional right to appointed counsel in a Section 1983 action. Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997) (citing Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir. 1981)).   The decision to appoint counsel is within "the sound discretion of the trial court and is granted only in exceptional circumstances." Agyeman v. Corrections Corp. of America, 390 F.3d 1101, 1103 (9th Cir. 2004) (quoting Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir. 1984)); see also Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009).   To decide whether exceptional circumstances exist, the court must evaluate both "the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986) (quoting Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983)).

Plaintiff bears the burden of demonstrating the existence of "exceptional circumstances" warranting the appointment of counsel. Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009). Here, Plaintiff has failed to provide any reason why counsel should be appointed and the Court can discern none from the current record.   Accordingly, Plaintiff's motion for appointment of counsel is DENIED WITHOUT PREJUDICE. Nothing in this Order is intended to preclude Plaintiff from retaining counsel on his own.

III.

DISCUSSION

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss Plaintiff's Complaint due to defects in pleading. <u>Pro se</u> litigants in civil rights cases, however, must be given leave to amend their complaints unless it is absolutely clear that the deficiencies cannot be cured by amendment. <u>See</u> <u>Lopez</u>, 203 F.3d at 1128-29. Accordingly, the Court grants Plaintiff leave to amend, as indicated below.

**A. Plaintiff's Section 1983 Civil Rights Claims Against Defendants In Their Official Capacity Are Improper**

Plaintiff sues Defendants in both their individual and official capacities. (Complaint at 2-3). A suit against a state official in his official capacity is functionally a suit against the state. <u>Flint v. Dennison</u>, 488 F.3d 816, 824-25 (9th Cir. 2007). However, the Eleventh Amendment bars federal actions for damages, such as a civil rights suit under Section 1983, against states. <u>Pena v. Gardner</u>, 976 F.2d 469, 472 (9th Cir. 1992). Consequently, the Eleventh Amendment also bars claims for damages under section 1983 against state officials acting in their official capacity. <u>Flint</u>, 488 F.3d at 824-25 ("[S]tate officials sued in their official capacities . . . are not 'persons' within the meaning of § 1983 and are therefore generally entitled to Eleventh Amendment immunity."); <u>see also</u> <u>Snow v. McDaniel</u>, 681 F.3d 978, 991 (9th Cir. 2012) ("[F]ederal courts are barred by

7

the Eleventh Amendment from awarding damages against state officials acting in their official capacities."). Accordingly, section 1983 civil rights claims against Defendants in their "official capacity" are improper. To the extent that Plaintiff intends to seek damages for violation of his civil rights, he may sue Defendants under Section 1983 in their individual capacity only. Accordingly, the Section 1983 claims against the Defendants in their official capacities must be dismissed.[5]

---

[5] The Court notes that unlike a federal action for damages under section 1983 against a state employee, which may be brought against the state employee in his individual capacity only, a state law claim under the CTCA against a state employee may be brought against either the public employee or the governmental entity that employs him, so long as an administrative claim is first presented to the governmental entity that will be required to indemnify the employee if the employee is found liable. See County of Los Angeles v. Superior Court, 127 Cal. App. 4th 1263, 1267 (2005) ("The California Tort Claims Act (Act) [Cal. Gov't Code §§ 810 et seq.] governs actions against public entities and public employees. . . . Under the Act, no person may sue a public entity or public employee for 'money or damages' unless a timely written claim has been presented to and denied by the public entity.") (quoting Cal. Gov't Code § 945.4); People ex rel. Harris v. Rizzo, 214 Cal. App. 4th 921, 939 (2013) ("[C]laims [under the CTCA] against public employees or former public employees for injuries resulting from acts or omissions in the course of their employment must be presented if a claim against the employing entity for the same injury must be presented. [Cal. Gov't Code § 950.2.] This is so because a public entity is required to pay a judgment against its employee 'for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity.'") (quoting Cal. Gov't Code § 825(a)); Briggs v. Lawrence, 230 Cal. App. 3d 605, 613 (1991) ("Employees of public entities may be sued as individuals [under the CTCA] . . . If the injury on which suit was based arose out of an act or omission within the scope of the employee's employment, the employee may tender defense to, and may thereupon become entitled to indemnification by, the public-entity employer." (citing Cal. Gov't Code §§ 825-825.6). Accordingly, the individual Defendants are properly named under Plaintiff's CTCA claim, as long as Plaintiff presented a proper administrative claim.

**B.   Plaintiff's  Allegations  Based  Upon  The  Administrative Grievance Process Fail To State A Claim**

To state a claim under § 1983, a plaintiff must show that (1) the action occurred "under color of state law" and (2) the action resulted in the deprivation of a federal constitutional or statutory right. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). However, the existence of a prison grievance procedure does not create any substantive rights enforceable under the Due Process Clause. See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) ("With respect to the Due Process Clause, any right to a grievance procedure is a procedural right, not a substantive one. Accordingly, a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause.") (citations omitted); Doe v. Moore, 410 F.3d 1337, 1350 (11th Cir. 2005) ("State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory.") (internal quotation marks omitted). Consequently, an inmate does not have a right to any particular grievance procedure or result. See, e.g., Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure.") (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)); Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005) (an inmate "does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction"). Moreover, a prison official's failure to process

9

1    a grievance, without more, is insufficient to establish liability

2    under section 1983. See Buckey v. Barlow, 997 F.2d 494, 495 (8th

3    Cir. 1993).

4

5        Based upon the current allegations, it is unclear whether

6    Plaintiff is trying to raise a claim based on Defendants'

7    purported interference with the grievance process. Plaintiff

8    mentions that he "was dissatisfied with the second level response

9    that there was a possibility of an investigation by the OIA, and

10   [Plaintiff] would be notified upon completion as to whether staff

11   violated policy." (Complaint at 13). Plaintiff also received a

12   denial at the third level of review, and he states that "[u]pon

13   an indepth [sic] review of the third level appeal decision, it

14   becomes apparent that the review was for show and that they

15   simply went through the motions." (Id.). However, as noted

16   above, Plaintiff does not have a constitutional right to a

17   particular grievance procedure or outcome. Accordingly, to the

18   extent that Plaintiff is attempting to assert a claim challenging

19   the grievance process, the Complaint fails to state a claim.

20

21   C.   **The Complaint Fails to Satisfy Federal Rule of Civil**

22        **Procedure 8**

23

24       Federal Rule of Civil Procedure 8(a)(2) requires that a

25   complaint contain "'a short and plain statement of the claim

26   showing that the pleader is entitled to relief,' in order to

27   'give the defendant fair notice of what the . . . claim is and

28   the grounds upon which it rests.'" Bell Atlantic Corp. V.

1  <u>Twombly</u>, 550 U.S. 544, 555 (2007).  Rule 8(e)(1) instructs that

2  "[e]ach averment of a pleading shall be simple, concise, and

3  direct."  A complaint violates Rule 8 if a defendant would have

4  difficulty understanding and responding to the complaint.

5  <u>Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.</u>, 637

6  F.3d 1047, 1059 (9th Cir. 2011).

7

8      Here, the Complaint does not comply with the standards of

9  Rule 8.  In his lengthy Complaint, Plaintiff alleges facts that

10 are extraneous and irrelevant.  For example, it is unclear

11 whether Plaintiff is attempting to raise a claim relating to his

12 medical care.  Plaintiff alleges ongoing pain and other medical

13 conditions, but does not appear to sue any medical providers.

14 (Complaint at 15).  If Plaintiff is not challenging his medical

15 care, his detailed allegations regarding the health care he

16 received are irrelevant.  Additionally, Plaintiff also provides

17 detailed information about the grievance process that is

18 irrelevant to Plaintiff's primary claims.

19

20     Similarly, it is unclear whether Plaintiff is attempting to

21 state a cause of action for conspiracy.  Plaintiff states that

22 his medical records contained a "few discrepancies that were

23 recorded on the 7219 form that were false and misleading[,]"

24 which he contends is evidence of a conspiracy "from the top down

25 to conceal what really happened on the day of the incident."

26 (Complaint at 11).  However, Plaintiff fails to properly state a

27 cause of action for conspiracy.  To state a claim for conspiracy,

28 Plaintiff must allege an "agreement or 'meeting of the minds' to

violate [his] constitutional rights." <u>Fonda v. Gray</u>, 707 F.2d 435, 438 (9th Cir. 1983) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158 (1970)). Plaintiff does not identify who may have participated in the conspiracy, which rights the conspiracy violated, or what purpose the conspiracy served.

Due to these ambiguities in Plaintiff's Complaint, it would be difficult for Defendants to formulate a response to the allegations. The Complaint does not provide Defendants with fair notice of the claims in a clear and concise statement. <u>See Twombly</u>, 550 U.S. at 555. Accordingly, the Complaint is dismissed with leave to amend. Should Plaintiff choose to file an Amended Complaint, Plaintiff is advised to identify the nature of his legal claims clearly and <u>concisely</u>, the facts giving rise to each claim, the specific Defendants against whom each claim is raised and the relief sought. Any amended complaint should discuss only those legal wrongs for which Plaintiff is seeking relief.

**IV.**

**CONCLUSION**

For the reasons stated above, the Complaint is dismissed with leave to amend. If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a First Amended Complaint. In any amended complaint, the Plaintiff shall cure the defects described above. **Plaintiff shall not include new**

**defendants or new allegations that are not reasonably related to the claims asserted in the original complaint.** The First Amended Complaint, if any, shall be complete in itself and shall bear both the designation "First Amended Complaint" and the case number assigned to this action. It shall not refer in any manner to any previously filed complaint in this matter.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, <u>a copy of which is attached.</u>** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff is strongly encouraged to keep his statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law or include legal argument. Plaintiff is also advised to omit any claims for which he lacks a sufficient factual basis.

**Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey Court orders pursuant to Federal Rule of Civil**

1  **Procedure 41(b). <u>Plaintiff is further advised that if he no</u>**

2  **<u>longer wishes to pursue this action, he may voluntarily dismiss</u>**

3  **<u>it by filing a Notice of Dismissal in accordance with Federal</u>**

4  **<u>Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is</u>**

5  **<u>attached for Plaintiff's convenience.</u>**

6

7  DATED: April 7, 2014

8                                         /S/
                              _____
                              SUZANNE H. SEGAL
9                             UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28